**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LINDA LIANO,**

**Plaintiff,**

**v.**

**COMPUTER SCIENCES CORP.,**

**Defendant.**

**CIVIL ACTION NO. 16-1080**

# PLAINTIFF LINDA LIANO'S BRIEF IN OPPOSITION TO DEFENDANT COMPUTER SCIENCES CORPORATION'S MOTION FOR SUMMARY JUDGMENT

**CONSOLE MATTIACCI LAW, LLC**

/s/ Rahul Munshi
Stephen G. Console, Esquire
Rahul Munshi, Esquire
1525 Locust St.
Ninth Floor
Philadelphia, PA 19102

Counsel for Plaintiff, Linda Liano

Dated: November 14, 2017

# TABLE OF CONTENTS

**I. INTRODUCTION....................................................................................................1**

**II. STATEMENT OF MATERIAL FACTS THAT PRECLUDE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CSC CORPORATION...2**

A. Defendant Expresses Its Concern With Its Aging Management Population Shortly Before Terminating Plaintiff's Employment ..............................................................3

B. Defendant's Bias In Favor of Younger and/or Male Employees.................................4

C. Defendant Terminates Plaintiff's Employment in Connection with a "Restructuring" or "Delaying Process" or "Reduction in Force"..............................................................7

D. Defendant Retains a Similarly Situated Younger, Male Employee..............................8

**III. STANDARD OF REVIEW ..........................................................................................10**

**IV. LEGAL ARGUMENT..................................................................................................11**

A. Defendant's Motion for Summary Judgment Should Be Denied With Regards to Plaintiff's Underlying Claims of Age and Sex Discrimination Because a Jury Could Conclude That Plaintiff Was Subjected to Unlawful Discrimination by Defendant .. 11

1. Plaintiff Clears the Low Bar of Establishing a *Prima Facie* Case ..................12

2. Plaintiff Has Set Forth Sufficient Evidence Such That a Reasonable Jury Could Conclude That Defendant's Asserted Reasons for Terminating Her Employment Are Pretextual..............................................................18

**V. CONCLUSION .............................................................................................................25**

# TABLE OF AUTHORITIES

**Cases**

Aman v. Cort Furniture Rental Corp.
85 F.3d 1074 (3d Cir. 1996)....................25

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986)....................10

Barber v CSX Dist. Servs.
68 F.3d 694 (3d Cir. 1995)....................18

Burlington v. Ellerth
524 U.S. 742 (1998)....................25

Burrage v. United States
134 S.Ct. 881 (2014)....................15

Celotex Corp v. Catrett
477 U.S. 317 (1986)....................23

Chippolini v. Spencer Gifts
814 F.2d 893 (3d Cir. 1987)....................18

Corbetto v. Wyeth Pharma.
619 F.Supp.2d 142 (W.D. Pa. 2007)....................12

Doe v. C.A.R.S. Protection Plus, Inc.
527 F.3d 358 (3d Cir. 2008)....................10, 14, 18, 22

Dreyer v. Arco Chem. Co.
801 F.2d 651 (3d Cir. 1986)....................16

Ezold v. Wolf Block
983 F.2d 509 (3d Cir. 1993)....................12

Farrell v. Planters Lifesavers Co.
206 F.3d 271 (3d Cir. 2001)....................18

Fuentes v. Perskie
32 F.3d 759 (3d Cir. 1994)....................18, 24

Gerundo v. AT&T Servs.
2016 U.S. Dist. LEXIS 177583 (E.D. Pa. Dec. 20, 2016)....................24

Goosby v. Johnson & Johnson Med., Inc.
228 F.3d 313 (3d Cir. 2000)....................................................................................14

Graham v. F.B. Leopold Co., Inc.
779 F.2d 170 (3d Cir. 1985)....................................................................................15

Gross v. FBL Fin. Servs.
129 S.Ct. 2343 (2009)..............................................................................................15

Hunt v. Cromartie
526 U.S. 541 (1999).................................................................................................23

Iadimarco v. Runyon
190 F.3d 151 (3d Cir. 1999)....................................................................................18

Ideal Dairy Farms, Inc. v. John Labatt, Ltd.
90 F.3d 737 (3d Cir. 1996)......................................................................................23

Idahoan Fresh v. Advantage Produce, Inc.
157 F.3d 197 (3d Cir. 1998)....................................................................................25

Jackson v. Univ. of Pittsburgh
826 F.2d 230 (3d Cir. 1987)....................................................................................14

Jalil v. Avdel Corp.
873 F.2d 701 (3d Cir. 1988)...............................................................................14, 18

Jones v. Sch. Dist. Of Philadelphia
198 F.3d 403 (3d Cir. 1999)....................................................................................12

Leaphart v. Am. Friends Serv. Committee
No. 07-4919, 2008 U.S. Dist. LEXIS 85530 (E.D. Pa. Oct. 23, 2008) ................................23

Marzano v. Computer Science Corp.
91 F.3d 497 (3d Cir. 1996)...................................................................................12, 23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (1986).................................................................................................10

McDonnell Douglas Corp. v. Green
411 U.S. 792 (1973)............................................................................................12, 18

Neiderlander v. Am. Video Glass Co.
80 Fed.Appx. 256 (3d Cir. 2003)............................................................................12

Ness v. Marshall
620 F.2d 517 (3d Cir. 1981)....................14

Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al.
742 F.Supp.2d 601 (E.D. Pa. 2010)....................14

Pivirotto v. Innovation Systems
191 F.3d 344 (3d Cir. 1999)....................12

Reid v. Temple Univ.
No. 17-2179, 2017 U.S. Dist. LEXIS 183814 (E.D.Pa. Nov. 7, 2017)....................16

Robinson v. City of Philadelphia
491 Fed. Appx. 295 (3d Cir. 2012)....................15

Sarullo v. U.S. Postal Serv.
352 F.3d 789 (3d Cir. 2003)....................12, 15, 16

Scheidemantle v. Slippery Rock Univ.
470 F.3d 535 (3d Cir. 2006)....................12

Seman v. Coplay Cement Co.
26 F.3d 428 (3d Cir. 1994)....................18

Sempier v. Johnson & Higgins
45 F.2d 724 (3d Cir. 1995)....................12

Sheridan v. E.I. Dupont de Nemours & Co.
100 F.3d 1061 (3d Cir. 1996)....................16, 18

Smith v. Pittsburgh Gage & Supply Co.
464 F.2d 870 (3d Cir. 1972)....................10

Smith v. Thomas Jefferson Univ.
No. 05-2834, 2006 U.S. Dist. LEXIS 45079 (E.D.Pa. June 29, 2006)....................16

Sorba v. PA Drilling Co.
821 F.2d 200 (3d Cir. 1987)....................18

Stewart v. Rutgers Univ.
120 F.3d 426 (3d Cir. 1997)....................14

St. Mary's Honor Center v. Hicks
509 U.S. 502 (1993)....................18, 24

Tomasso v. Boeing Co.
445 F.3d 702 (3d Cir. 2006)....................24

Torre v. Casio, Inc.
42 F.3d 825 (3d Cir. 1994)....................12

Weldon v. Kraft, Inc.
896 F.2d 793 (3d Cir. 1990)....................12, 15

Wilcher v. Postmaster Gen.
441 Fed.Appx. 879 (3d Cir. 2011)....................16

**Statutes**

Age Discrimination in Employment Act
29 U.S.C. §621, *et seq.* .................... *passim*

Title VII of the Civil Rights Act of 1964
42 U.S.C. §2000e, *et seq.*.................... *passim*

Pennsylvania Human Relations Act
43 P.S. §951, *et seq.*.................... *passim*

**Other Authorities**

Fed.R.Civ.P. 26....................21

Fed.R.Civ.P. 30(b)(6).................... *passim*

Fed.R.Civ.P. 56....................10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINDA LIANO,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 16-1080** |
| **v.** | : | |
| **COMPUTER SCIENCES CORP.,** | : | |
| **Defendant.** | : | |

**PLAINTIFF LINDA LIANO'S MEMORANDUM OF LAW**
**IN SUPPORT OF HER OPPOSITION TO DEFENDANT COMPUTER**
**SCIENCES CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Linda Liano brings this employment discrimination action against her former employer, Defendant Computer Sciences Corporation ("CSC"). Defendant terminated Plaintiff's employment as Operations Director in December 2012. Her termination – at age fifty-nine (59) – came on the heels of Defendant's Vice President ("VP") of Human Resources ("HR") explicitly sharing with Plaintiff and her colleagues that Defendant had concerns with its aging population, especially its aging management workforce of which Plaintiff was a part. Plaintiff was the oldest individual reporting to her direct supervisor, Mark Roman, and was the only one (1) of his direct reports terminated. Over the two (2) previous years, Mr. Roman had showed his bias in favor of younger, male employees who he protected and retained while terminating female employees. Mr. Roman had also directly stated to Plaintiff that he wanted to bring in "younger" and "fresher" employees into Defendant. Although Plaintiff was terminated, a younger, male operations employee was retained and continues to work at Defendant in a role for which Plaintiff is qualified.

Ms. Liano was discriminated against because of her age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq*. ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the PHRA. As set forth in detail herein, Ms. Liano has met her burden at this stage to present sufficient evidence from which a reasonable jury could conclude that Defendant discriminated against her, and, therefore, Defendant's Motion for Summary Judgment should be denied and Plaintiff should be permitted to present her case to a jury.

## II. STATEMENT OF MATERIAL FACTS THAT PRECLUDE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CSC CORPORATION.

Plaintiff Linda Liano commenced employment with Defendant CSC in 1997 as a senior consultant in the Life Sciences Practice.[1] Approximately one (1) year later, Plaintiff's position changed to an operations management role.[2] As an operations professional, Plaintiff's job duties included, but were not limited to, sales and revenue forecasting, sales administration, sales reporting, budget management, staffing management, preparing and facilitating meetings, and a range of practice support functions.[3] In 2000, Plaintiff was promoted to Business & Demand Manager, National Healthcare Practice and her title became Principal.[4] In 2010, Plaintiff's role changed to Business Manager and her function was Operations Director.[5] At her termination date in December 2012, Plaintiff had eight (8) direct reports, including an Operations Director named Nick Northam.[6]

---

[1] Deposition of Linda Liano ("Liano Dep.") (attached hereto as Exhibit 1) at 61:18-62:23.
[2] Id. at 64:7-11.
[3] Id. at 147:12-23; Deposition of Defendant's 30(b)(6) Corporate Representative ("30(b)(6) Dep.") (attached hereto as Exhibit 2) at 47:1-18.
[4] Liano Dep. at 80:16-81:14; see April 26, 2000 Offer Letter (attached hereto as Exhibit 3).
[5] Liano Dep. at 156:6-1; see Job Description (attached hereto as Exhibit 4).
[6] Liano Dep. at 193:8-194:17.

### A. Defendant Expresses Its Concern With Its Aging Management Population Shortly Before Terminating Plaintiff's Employment.

In late Summer or early Fall 2012 – a few months before Plaintiff's termination – Plaintiff participated in a telephone conference with VP of HR Debi Stafford and other Operations Directors where Ms. Stafford **explicitly discussed Defendant's concern with the aging population of the workforce.**[7] Specifically, Ms. Stafford "presented data that she had gathered, along with her HR management team, that showed the age distribution curve for CSC management, **and the results of the analysis was that CSC had an aging management population.**"[8] Defendant presented data and PowerPoint slides and there was an open discussion on the conference call that Defendant's age distribution for management-level employees was skewed to the right, with the majority of the managers - such as Plaintiff - being over the age of fifty-five (55).[9] Ms. Stafford presented this data as fact, communicating that Defendant's "management population is aging, and it is going to drop off a cliff if we don't do anything about it."[10]

VP of HR Stafford admits that during her tenure with Defendant she would discuss the age demographics of Defendant's employees.[11] These conversations would take place, among other times, within the context of "the encroaching age of our retirement-eligible population"[12] and "concerns that CSC may have had about the aging workforce of the company."[13] According to VP of HR Stafford, Defendant did in fact have "an aging workforce in the 2012 period."[14] Further, she recalls conversations about how the management-level employees of Defendant tended to be

---

[7] Id. at 186:20-187:7; 205:12-23.
[8] Id. at 187:3-7.
[9] Id. at 187:7-16; 206:3-12.
[10] Id. at 204:3-19.
[11] Deposition of Debi Stafford ("Stafford Dep.") (attached hereto as Exhibit 5) at 31:3-9.
[12] Id. at 32:2-14.
[13] Id. at 33:21-34:4.
[14] Id. at 33:15-19.

fifty (50) years old and over.[15] VP of HR Stafford would have these conversations with, among other people, Jim Cook (President of the Business Solutions Services ("BSS") Unit) and Mark Roman (Plaintiff's direct supervisor).[16]

She further admits to seeing visual representations of data of ages and the age distribution curve at Defendant, which were presented through PowerPoint presentations.[17] She would create these PowerPoint presentations at the request of Mr. Cook so that he and other business leaders, such as Mr. Roman, could examine the information as it pertained to the BSS group.[18]

VP of HR Stafford agrees that, as a general matter, age and sex discrimination issues exist in the workplace.[19] In twenty-four (24) years of employment with Defendant, she received and investigated more than fifty (50) internal complaints of discrimination.[20] However, in **zero** of these investigations into complaints of discrimination did she **ever** find that discrimination actually did take place.[21] She admits that part of HR's job is to insulate or protect a company against liability.[22]

**B. Defendant's Bias In Favor of Younger and/or Male Employees.**

Starting in or around April 2010, Plaintiff began reporting to Mr. Roman, President of Global Healthcare Operations, within the BSS Unit.[23] During Plaintiff's tenure, Mr. Roman reported to Mr. Cook, President of BSS.[24] Plaintiff continued to report to Mr. Roman until her termination in December 2012.[25] At her termination date, Plaintiff was the oldest individual

---

[15] Id. at 46:2-7.
[16] Id. at 24:15-25.
[17] Id. at 38:22-39:14; 40:18-22.
[18] Id. at 42:7-43:4; 110:1-12.
[19] Id. at 23:21-24:1.
[20] Id. at 28:3-23; 29:12-14.
[21] Id. at 29:22-30:9.
[22] Id. at 27:6-17.
[23] Liano Dep. at 86:14-16; 158:13-15; 159:14-23; Deposition of Mark Roman ("Roman Dep.") (attached hereto as Exhibit 6) at 27:3-15.
[24] Roman Dep. at 27:19-28:1.
[25] Liano Dep. at 86:17-20.

reporting directly to Mr. Roman and the only one of Mr. Roman's direct reports to be terminated.[26]

While supervising Plaintiff, Mr. Roman expressed his bias in favor of younger employees. For example, Mr. Roman **stated to Plaintiff that he was interested in bringing in "younger" and "fresher" employees.**[27]  He did not indicate his preference solely in reference to entry level employees – Plaintiff understood his comment to apply to individuals at any particular level.[28]

By way of further example, in 2010 Mr. Roman hired a young man named Ben Petitti, who was around twenty-five (25) years old, to be Plaintiff's direct report.[29]  When Mr. Roman and Plaintiff discussed the filling of this position, Plaintiff recommended that Defendant hire internally, as there were individuals in-house who were career project management professionals.[30] Nevertheless, Mr. Roman hired Mr. Petitti – an external candidate – who was not a certified project management professional and who had no project management experience on his résumé.[31]

After hiring Mr. Petitti without consulting Plaintiff, Mr. Roman commenced a very close relationship with him to the detriment of Plaintiff.  For example, before Plaintiff even met Mr. Petitti, Mr. Roman stated to him that Plaintiff was "hot."[32]  Mr. Roman confirmed to Plaintiff that he made this comment.[33]  As Plaintiff explained at her deposition:

> So that action [of Mr. Roman hiring Mr. Petitti] combined with his comment about a desire to bring young people into his organization made me feel that his decision to bring in Ben was based on an age bias, and then his comment demonstrating camaraderie with Ben before I had even had a chance to meet him, was showing that he had this almost good old boy camaraderie with a very young employee.[34]

---

[26] See Defendant's EEOC Position Statement (attached hereto as Exhibit 7) at p.1; 30(b)(6) Dep. at 61:16-62:1.
[27] Liano Dep. at 94:22-95:2.
[28] Id. at 95:3-6.
[29] Id. at 91:3-6; 96:4-9; 97:3-4; Roman Dep. at 96:1-3.
[30] Liano Dep. at 95:18-96:3.
[31] Id. at 96:3-9.
[32] Id. at 91:17-24.
[33] Id.
[34] Id. at 96:10-18.

Mr. Roman's bias in favor of Mr. Petitti continued until Plaintiff's termination.  For example, in November 2012 - one (1) month before Plaintiff's termination - Mr. Roman invited Mr. Petitti (and not Plaintiff, his supervisor) to attend an executive meeting in Falls Church, VA.[35] Both Mr. Roman and Mr. Petitti live in the Cleveland area and drove to the executive meeting together.[36]  Mr. Roman stated to Plaintiff that Mr. Petitti's role at the meeting was to take notes; however, administrative assistant Heather Graninger (also a direct report of Plaintiff) was located in Falls Church, VA herself and could have performed that role with no expense to the company.[37] This occurred during an alleged period of cost-saving by the company.[38]  Afterwards, Mr. Petitti informed Plaintiff that he was present at the executive meeting but did not take any notes.[39]

From 2010 to 2012, Mr. Roman expressed his bias in favor of male employees on several additional occasions.  For example, during this period Mr. Roman stated to Plaintiff his dissatisfaction with the performance of two (2) female employees, Anne Roeser and Lisa Ragusa.[40] Mr. Roman decided to eliminate both of their positions through a reduction in force.[41]  In contrast, Mr. Roman stated to Plaintiff his similar dissatisfaction with the performance of three (3) male employees – Craig Combs, David Hampshire, and Nigel Whitehead.[42]  All three (3) of these males were moved into different positions within the Healthcare Practice and still reported to Mr. Roman, but were not terminated or had reduced pay even though their responsibilities diminished.[43] Eventually all three (3) men voluntarily resigned on their own terms.[44]

---

[35] Id. at 135:16-20; 138:24-139:1.
[36] Id. at 135:24-136:2; Roman Dep. at 108:3-17.
[37] Liano Dep. at 135:20-136:15.
[38] Id. at 136:9-15; 138:15-23.
[39] Id. at 137:8-22.
[40] Id. at 208:19-209:3
[41] Id.; Roman Dep. at 84:18-85:10.
[42] Liano Dep. at 209:5-17.
[43] Id. at 220:8-15; 231:17-25.
[44] Id. at 209:14-15; Roman Dep. at 89:4-25; 90:17-24.

**C. Defendant Terminates Plaintiff's Employment in Connection with a "Restructuring" or "Delayering Process" or "Reduction in Force."**

VP of HR Stafford led the restructuring process at Defendant from an HR perspective.[45] In this role, she worked directly with Mr. Roman as one of Defendant's managers.[46] According to Ms. Stafford, the decision to terminate Plaintiff's employment was made by CEO Mike Lawrie.[47] Ultimately, Plaintiff was the only one of Mr. Roman's reports who was fired.[48] At the time of her termination, Plaintiff was fifty-nine (59) years old and the oldest direct report of Mr. Roman.[49]

**Zero** documents exist that state or reflect why Plaintiff was chosen for termination.[50] VP of HR Stafford – who played an integral role in the restructuring – has never seen any memo or any paper stating why exactly Plaintiff was chosen to be fired.[51] She does not know how Defendant reached its conclusion that Plaintiff would be terminated or what factors it allegedly relied upon.[52] VP of HR Stafford agrees that it would be best practices for HR for a document to exist which states why Plaintiff was terminated or why she was removed from the proposed organizational chart, but she has never seen any such document.[53]

Defendant's Corporate Representative likewise testified as a FRCP 30(b)(6) witness that no written documents exist stating why the structure that Mr. Roman allegedly proposed was rejected[54] or why Plaintiff was chosen for termination.[55] No documents exist stating that the

[45] Stafford Dep. at 50:12-15.
[46] Id. at 51:11-13; 55:4-10; 56:11-16. Mr. Roman denies having **any** conversations with VP of HR Stafford regarding a reduction in force that resulted in Plaintiff's termination. Roman Dep. at 136:24-137:3.
[47] Stafford Dep. at 68:6-12. Plaintiff has never met or communicated directly with Mr. Lawrie. See Liano Declaration (attached hereto as Exhibit 12) at ¶17.
[48] Liano Dep. at 232:13-19; 30(b)(6) Dep. at 61:20-62:1.
[49] Liano Dep. at 253:24-254:1; see Exhibit 7 at p.1.
[50] Stafford Dep. at 72:11-16; Roman Dep. at 155:6-9.
[51] Stafford Dep. at 72:18-23.
[52] Id. at 74:12-18; 75:24-76:5; 77:8-15.
[53] Id. at 73:6-9; 78:2-8.
[54] 30(b)(6) Dep. at 86:9-15; 87:13-88:2.
[55] Id. at 89:10-21.

operations director role under Mr. Roman was to be eliminated.[56] No documents exist stating that all operations roles were to be terminated.[57]

In 2012, prior to Plaintiff's termination, two (2) Operations Directors who reported to her left the company.[58] One (1) was terminated for performance reasons; the other resigned.[59] Afterwards, Plaintiff's direct report, Anna Kanski, assumed interim Operations responsibility for the Health Plan Practice and Plaintiff took over additional duties as "[t]he work didn't go away with the elimination of those two resources."[60]

### D. Defendant Retains a Similarly-Situated Younger, Male Employee

Defendant's Corporate Representative explained in her deposition that the "delayering process" undertaken by Defendant in 2012 that led to Plaintiff's termination ultimately resulted in "a decision to remove all operations roles."[61] However, this assertion is demonstrably false, as Plaintiff's closest comparator, Nick Northam, was retained while Plaintiff was terminated.[62] Mr. Northam was an Operations Director for the Life Sciences Practice reporting to Plaintiff.[63] He joined Defendant as a result of an acquisition of First Consulting Group; thereafter, he assumed the role of an Operations Director and worked in an operations capacity.[64] Mr. Northam's experience with Defendant – not the predecessor company – was approximately four (4) years, compared to Plaintiff's tenure of over fifteen (15) years.[65]

---

[56] Id. at 89:22-90:20.
[57] Id. at 90:22-91:6.
[58] Liano Dep. at 163:1-20.
[59] Id.
[60] Id. at 185:4-9; Liano Declaration at ¶16.
[61] 30(b)(6) Dep. at 22:1-3; 24:3-10. While the Corporate Representative sought to distinguish "back office" operations employees from "front office" operations employees, she later conceded that Plaintiff handled both types of operations tasks. Id. at 22:23-23:11.
[62] Roman Dep. at 81:9-12.
[63] Liano Dep. at 133:1-6; Roman Dep. at 79:23-80:4.
[64] Liano Dep. at 133:7-14; Roman Dep. at 80:13-23.
[65] Liano Dep. at 194:7-9.

Mr. Northam's duties included, but were not limited to, budgeting, forecasting, expense management, staffing, performance management, deal reviews and pipeline management for the global Life Sciences practice including staff resources and projects in the US, UK, Germany and China.[66]  Both Plaintiff and Mr. Northam managed a team of direct reports, had the same job grade level, and were both classified as Directors.[67]  Plaintiff was in her late 50s when she was terminated in 2012, while Mr. Northam was in his late 30s.[68]

Mr. Northam was retained instead of Plaintiff and became a Global Sales Operations Director, which is a position that Plaintiff was qualified to perform.[69]  For example, Plaintiff has sales operations management experience in her career history and those duties were a component of her ongoing responsibilities as Operations Director.[70]  According to VP of HR Stafford, part of Plaintiff's job duties ultimately were taken over by the Sales group.[71]  Also, Defendant continued to fill Sales and other positions in 2012, even hiring some external candidates for these roles.[72]  Yet, Defendant never considered Plaintiff for any role and instead terminated her employment.[73]

According to Mr. Roman, Mr. Northam was not "eligible" to be terminated by Defendant as part of this restructuring because he was located in Europe.[74]  This specious assertion was contradicted by Defendant's Corporate Representative[75] and VP of HR Stafford, who testified that North American individuals were not treated any differently than their European counterparts with

---

[66] Liano Declaration at ¶13.
[67] Id.; Liano Dep. at 194:3-5.
[68] Liano Dep. at 194:14.
[69] Id. at 195:17-20.
[70] Id. at 195:20-25.
[71] Stafford Dep. at 85:22-86:5; 87:6-13.
[72] Roman Dep. at 134:13-136:6; 30(b)(6) Dep. at 119:8-121:5.
[73] 30(b)(6) Dep. at 159:18-20.
[74] Roman Dep. at 81:9-18.
[75] 30(b)(6) Dep. at 92:22-93:5.

regard to this restructuring.[76] Rather, individuals outside of North America were likewise affected by this restructuring and some were terminated during this process.[77]

Importantly, according to Defendant's Corporate Representative, Defendant continued to employ operations employees after the reduction in force, but Plaintiff was not considered for any of those roles and no individual ever reviewed Plaintiff's skill sets or experiences that would have been applicable to those positions.[78] Operations directors – like Plaintiff – in other industry groups of BSS were retained while Plaintiff was terminated in connection with the reduction in force.[79]

## III. STANDARD OF REVIEW

Summary judgment under FRCP 56 may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[80] If there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff, summary judgment should be denied.[81]

At this stage, the role of the judge is to determine whether or not there is a genuine dispute of material fact, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[82] The Court must view the facts in the **light most favorable** to the non-moving party – here Plaintiff – and must draw **all inferences** in favor of the Plaintiff.[83] On a motion for summary judgment, a "district court must resolve all inferences, doubts, and issues of credibility **against** the moving party."[84]

---

[76] Stafford Dep. at 102:20-103:16.
[77] Id.
[78] 30(b)(6) Dep. at 27:8-15; 31:6-15.
[79] Id. at 73:16-22; Liano Declaration at ¶¶5-10.
[80] Fed.R.Civ.P. 56(c).
[81] Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 362 (3d Cir. 2008).
[82] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
[83] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[84] Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972).

Defendant cannot prevail on its Motion because it has not demonstrated by admissible evidence that no reasonable jury could find in Plaintiff's favor on her claims of age and sex discrimination. There are genuine issues of material fact in dispute, including as to motivation and credibility, which must be decided by a jury, and from which a jury could infer from the record evidence that Defendant discriminated against Plaintiff because of her age and/or her sex.

## IV. LEGAL ARGUMENT

### A. Defendant's Motion for Summary Judgment Should Be Denied With Regards to Plaintiff's Claims of Age and Sex Discrimination Because a Jury Could Conclude That Plaintiff Was Subjected to Unlawful Discrimination by Defendant.

Defendant's Motion for Summary Judgment should be denied outright with regards to Plaintiff's discrimination claims. As set forth below, Plaintiff meets her low burden in establishing a *prima facie* case of discrimination. In short, a jury could conclude that the circumstances surrounding Defendant's decision to terminate Plaintiff's employment raise an inference of discriminatory action, as the decision came on the heels of Defendant's VP of HR explicitly lamenting the aging population of Defendant's management workforce; Plaintiff's direct supervisor showed a history of favoring younger and/or male employees; and Defendant retained a younger, male operations employee for a position that Plaintiff is qualified to perform.

Furthermore, a jury could conclude that Defendant's stated reasons for terminating Plaintiff's employment are pretext. In addition to the evidence in support of Plaintiff's satisfaction of the fourth prong of the *prima facie* case, Plaintiff can point to numerous facts that could lead a reasonable jury to either disbelieve Defendant's asserted reasons for terminating Plaintiff's employment or believe that a discriminatory reason more likely than not caused the action. For example, Defendant can point to **zero** documents memorializing the reasons for Plaintiff's

termination, how the decision was made, why Plaintiff was chosen, or who even participated in the process. It is for the jury to decide who to believe in this matter.

### 1. Plaintiff Clears the Low Bar of Establishing a *Prima Facie* Case.

Plaintiff's claims of age and sex discrimination are analyzed pursuant to the burden-shifting test set forth in McDonnell Douglas Corp. v. Green.[85] First, Plaintiff must establish a *prima facie* case by proffering sufficient evidence from which a jury could determine that: (1) she is a member of the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) under circumstances raising an inference of discriminatory action.[86] In an age case where an employee is terminated during a reduction in force, the plaintiff may also show "that the employer retained a sufficiently younger similarly situated employee."[87]

Courts routinely find that there is a **low bar** for establishing a *prima facie* case of employment discrimination.[88] Establishing a *prima facie* case is not an onerous burden and is easily met.[89] Cases in the Third Circuit hold that strict interpretations of the *prima facie* case should not be used to deny the plaintiff an opportunity to demonstrate that an employer's justifications for its actions are pretextual.[90] The *prima facie* case should be flexible, tailored to fit the specific context in which it is applied and not squeezed into a one-size-fits-all formula.[91]

---

[85] 411 U.S. 792 (1973).

[86] See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

[87] Pivirotto v. Innovation Systems, 191 F.3d 344, 357 (3d Cir. 1999) ("The fourth element of a *prima facie* case is intended to be flexible and "must be relaxed in certain situations, as when there is a reduction in force.") (quoting Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994)); Marzano v. Computer Science Corp., 91 F.3d 497, 502 (3d Cir. 1996) (discussing relaxation of the fourth prong of the *prima facie* case when the employee's layoff occurs in the context of a reduction in force).

[88] See Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 (3d Cir. 2006); Ezold v. Wolf Block, 983 F.2d 509, 523 (3d Cir. 1993) ("Because the *prima facie* case is easily made out, it is rarely the focus of the ultimate disagreement.").

[89] See Corbetto v. Wyeth Pharma., 619 F.Supp.2d 142 (W.D. Pa. 2007) (quoting Sempier v. Johnson & Higgins, 45 F.2d 724, 728 (3d Cir. 1995)).

[90] See Sempier, 45 F.3d at 729; see also Neiderlander v. Am. Video Glass Co., 80 Fed.Appx. 256, 261 (3d Cir. 2003) (the burden of establishing a *prima facie* case is "not onerous" and is a "low threshold").

[91] Jones v. Sch. Dist. Of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999); Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990) ("The framework set forth in McDonnell Douglas . . . was never intended to be rigid, mechanized or

Here, Defendant concedes that Plaintiff can create a genuine issue of material fact, and therefore survive summary judgment, on the first three (3) prongs of the *prima facie* case for both her age and sex discrimination claims.[92] Accordingly, this Section will focus on the plain fact that Defendant's argument that Plaintiff is unable to meet the fourth prong is unpersuasive. Taking the evidence on the record in the light most favorable to Plaintiff, she has set forth ample evidence demonstrating Defendant's bias in its termination of her employment. Plaintiff has identified the following facts, and reasonable inferences therefrom, that lead to an inference of discrimination; as such, summary judgment on Plaintiff's claims should be denied.

***First***, mere **months** before Defendant's termination of Plaintiff's employment, Defendant's VP of HR expressly stated to Plaintiff and others, and provided data to support her assertions, that Defendant was concerned with the aging population of Defendant's management workforce.[93] VP of HR Stafford admitted that during her tenure with Defendant she would have conversations with business leaders – including Mr. Cook and Mr. Roman[94] – about "the encroaching age of our retirement-eligible population"[95] and "concerns that CSC may have had about the aging workforce of the company."[96] She communicated that Defendant's "management population is aging, and it is going to drop off a cliff if we don't do anything about it."[97] As VP of HR Stafford predicted, Defendant did do something about it. It terminated Plaintiff to address its concern with the aging management population. Plaintiff was fifty-nine (59) years old when she was terminated in December 2012 and was the oldest of the management-level employees

ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.") (internal citations omitted).

[92] See Deft's Brief at p.16.

[93] Liano Dep. at 186:20-187:7; 205:12-23.

[94] Stafford Dep. at 24:15-25.

[95] Id. at 32:2-14.

[96] Id. at 33:21-34:4.

[97] Liano Dep. at 204:3-19.

reporting directly to Mr. Roman.[98] She was also the only one terminated.[99]

While these issues are understandably omitted from Defendant's Motion, it is anticipated that Defendant in its Reply Brief will argue that these communications regarding Defendant's aging workforce either did not happen or are being taken out of context. At bottom, this is a credibility dispute that is for a jury to consider. **"When the defendant's intent has been called into question, the matter is within the sole province of the factfinder."[100]** As the Third Circuit has noted, "because intent is a substantive element of the cause of action – generally to be inferred from the facts and conduct of the parties – the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility."[101] At the summary judgment stage, "all that is required [for the non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth."[102] For these reasons, summary judgment is to be used **sparingly** in employment discrimination cases.[103] The Third Circuit urges particular caution about granting summary judgment to an employer when intent is at issue, particularly in discrimination cases.[104]

***Second***, Mr. Roman expressed his bias in favor of younger and male employees on several occasions while acting as Plaintiff's direct supervisor. Mr. Roman **stated to Plaintiff that he was interested in bringing in "younger" and "fresher" employees.**[105] Mr. Roman hired a young

---

[98] Liano Dep. at 253:24-254:1; see Exhibit 7 at p.1.
[99] Liano Dep. at 232:13-19; 30(b)(6) Dep. at 61:20-62:1.
[100] Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1988).
[101] Ness v. Marshall, 620 F.2d 517, 519 (3d Cir. 1981).
[102] Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al., 742 F.Supp.2d 601, 604 (E.D. Pa. 2010) (quoting Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 233 (3d Cir. 1987)).
[103] C.A.R.S., 527 F.3d at 369.
[104] Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000); see also Stewart v. Rutgers Univ., 120 F.3d 426, 431 (3d Cir. 1997) (explaining that the summary judgment standard is to be "**applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues**.").
[105] Liano Dep. at 94:22-95:2.

man – Mr. Petitti – who was an external candidate with no relevant experience to work under Plaintiff, and thereafter displayed an unusually close camaraderie with him to Plaintiff's detriment.[106]  He invited Mr. Petitti to an executive meeting in Virginia, instead of Plaintiff, and travelled with him despite Defendant engaging in a "cost-saving" period during that time.[107] Further, Mr. Roman protected the jobs of three (3) males who were under-performing which allowed them to remain at Defendant until they were ready to voluntarily resign.[108]  In contrast, he terminated two (2) female employees who likewise had performance issues.[109]

Of course, Mr. Roman and Defendant deny treating any employee differently based on age and/or sex.  Importantly, however, a plaintiff's testimony **alone** is sufficient to create a genuine issue of fact about this issue.[110]  It is for the jury to decide who to believe – Plaintiff or Defendant. And if the jury believes Plaintiff, the jury will have to decide why Mr. Roman made his comments about bringing in "younger" and "fresher" employees into Defendant, and why he treated men and women in the workplace differently. [111]

***Third***, the Third Circuit has "explicitly rejected a requirement that a plaintiff prove he was replaced by someone outside the protected class to prove a *prima facie* of discrimination."[112]

---

[106] Id. at 95:18-96:9.

[107] Id. at 136:9-15; 138:15-23.

[108] Id. at 220:8-15; 231:17-25; 209:14-15; Roman Dep. at 89:4-25; 90:17-24.

[109] Roman Dep. at 84:18-85:10; Liano Dep. at 208:19-209:3.

[110] See Weldon, 896 F.2d at 800 (noting that "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion"); Graham v. F.B. Leopold Co., Inc., 779 F.2d 170, 173 (3d Cir. 1985) (observing that plaintiff's deposition testimony could suffice to create a genuine dispute about a material issue).

[111] Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. §623(a)(1).  In Gross v. FBL Fin. Servs., 129 S.Ct. 2343, 2351 (2009), the Supreme Court held that under the ADEA, the plaintiff must prove that the defendant employer would not have taken the adverse action "but for" the plaintiff's age.  More recently, the Supreme Court has explained that under a "but for" causation standard, a plaintiff must prove that age was **a** "but for" cause of the employer's adverse action, not **the** "but for" cause of the same.  Burrage v. United States, 134 S.Ct. 881, 888-89 (2014).  Further, neither the ADEA nor the PHRA requires proof that the illegal factor was the **only** reason.  In fact, "it is reversible error" for a district court "to require proof that age discrimination was the sole cause for an adverse employment decision." Robinson v. City of Philadelphia, 491 Fed. Appx. 295, 299 (3d Cir. 2012).

[112] Sarullo, 352 F.3d at 798 n.7.

However, evidence that Plaintiff was terminated in favor of a person who was sufficiently younger is enough to permit an inference of age discrimination.[113] Here, Plaintiff's closest comparator, Nick Northam, was retained while Plaintiff was terminated.[114] Although he reported to Plaintiff, both were Operations Directors within the same organizational structure reporting ultimately to Mr. Roman and Mr. Cook, had the same job level, similar job responsibilities, and had a number of direct reports.[115] To be considered similarly situated, comparator employees need not be identically situated, but must be similarly situated in all relevant aspects.[116] As this Court recently held, "[w]hether comparators are similarly situated is generally a question of fact for the jury."[117]

To the extent that Defendant may argue that Plaintiff's position was "unique" and therefore immune to comparison, a jury could easily conclude that to be implausible for a company like Defendant that employed 90,000 people prior to this restructuring.[118] However, if this Court finds that Plaintiff did in fact hold a "unique" position, Plaintiff is not barred from establishing a *prima facie* case of discrimination.[119] Rather, she may point to evidence demonstrating that her responsibilities remained and Defendant continued to seek out individuals with similar qualifications.[120] According to VP of HR Stafford, part of Plaintiff's job duties ultimately were taken over by the Sales group.[121] Also, Defendant continued to fill Sales and other positions in

---

[113] See Sheridan v. E.I. DuPont de Nemours, 100 F.3d 1061, 1084 (3d. Cir. 1996) (Alito, J., concurring in part and dissenting in part); Dreyer v. Arco Chem. Co., 801 F.2d 651, 655 (3d Cir. 1986) (computer operator whose job was eliminated was terminated while two payroll jobs and data entry jobs were given to sufficiently younger people makes *prima facie* case and sustains jury verdict of termination in violation of ADEA).
[114] Roman Dep. at 81:9-12.
[115] Liano Dep. at 133:1-6; 194:3-5; Roman Dep. at 79:23-80:4; Liano Declaration at ¶¶11-13.
[116] Wilcher v. Postmaster Gen., 441 Fed.App'x 879, 882 (3d Cir. 2011).
[117] Reid v. Temple Univ., No. 17-2197, 2017 U.S. Dist. LEXIS 183814, at *17 (E.D.Pa. Nov. 7, 2017) (Bartle, J.).
[118] 30(b)(6) Dep. at 119:1-7.
[119] Smith v. Thomas Jefferson Univ., No. 05-2834, 2006 U.S. Dist. LEXIS 45079, at *10 (E.D.Pa. June 29, 2006).
[120] Sarullo, 352 F.3d at 798 n.7 ("We require only that the plaintiff show that the employer continued to seek out individuals with similar qualifications after refusing to rehire the plaintiff under circumstances that raise an inference of unlawful discrimination.").
[121] Stafford Dep. at 85:22-86:5; 87:6-13.

2012, even hiring some external candidates for these roles.[122] Yet, Defendant never considered Plaintiff for any role and instead terminated her employment.[123]

Mr. Northam was retained instead of Plaintiff and became a Global Sales Operations Director, which is a position that Plaintiff was qualified to perform.[124] Oddly, Defendant argues that Mr. Northam and Plaintiff are not comparators because Mr. Northam's jurisdiction was regional while Plaintiff had global responsibilities.[125] First, Defendant's argument proves that Plaintiff was capable of performing Mr. Northam's job if her scope of responsibility within operations was greater than Mr. Northam's role. Second, Defendant admits that while Plaintiff was terminated, Mr. Northam took on a <u>Global</u> Sales Operations position, which Plaintiff explained encompassed responsibilities with which she had experience and duties that were a component of her ongoing responsibilities as Operations Director.[126]

On several occasions in its Brief, Defendant argues that neither Mr. Northam nor any of Mr. Roman's direct reports continued to report to him after the reduction in force.[127] Those facts are irrelevant. What matters is that all of them remained employed at Defendant while Plaintiff was the **only** direct report of Mr. Roman to be terminated. Further, Defendant argues that after the restructuring Mr. Roman's direct reports went down from seven (7) to four (4) completely separate individuals, and Plaintiff admitted that she was not qualified for any of those four (4) positions.[128] Again, those facts are irrelevant. What matters is that Defendant found new reporting structures for each and every other direct report of Mr. Roman other than Plaintiff, who was the oldest person reporting to Mr. Roman when she was terminated.

---

[122] Roman Dep. at 134:13-136:6; 30(b)(6) Dep. at 119:8-121:5.
[123] 30(b)(6) Dep. at 159:18-20.
[124] Liano Dep. at 195:17-20; Liano Declaration at ¶¶14-15.
[125] Deft's Brief at p.14-15.
[126] Liano Dep. at 195:20-25.
[127] Deft's Brief at pp.8-9; 14.
[128] Deft's Brief at p.9.

**2. Plaintiff Has Set Forth Sufficient Evidence Such That a Reasonable Jury Could Conclude That Defendant's Asserted Reasons for Terminating Her Employment Are Pretextual.**

"Once a plaintiff establishes a *prima facie* case the law creates a presumption of unlawful discrimination, and the defendant employer must articulate a legitimate nondiscriminatory explanation for the employer's adverse employment action."[129] If the employer meets its burden, then the plaintiff will be able to defeat summary judgment by demonstrating evidence from which a jury could conclude that the employer's stated reason is a pretext for discrimination.[130]

At summary judgment, the issue "is whether [the plaintiff] has pointed to evidence of inconsistencies and implausibilities in the employer's proffered reasons for [the employment actions] that *could* support an inference that the employer did not act for nondiscriminatory reasons."[131] Plaintiff can defeat summary judgment by pointing to some evidence from which a rational factfinder could reasonably either disbelieve the employer's articulated explanation or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[132] Thus, "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."[133] "The *prima facie* case and pretext inquiries often overlap."[134] Therefore, "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the McDonnell Douglas formula requires [the Court] to ration the evidence between one stage or the other."[135]

---

129 Barber v CSX Dist. Servs., 68 F.3d 694, 698 (3d Cir. 1995) (quoting Seman v. Coplay Cement Co., 26 F.3d 428, 432 (3d Cir. 1994)).

130 St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).

131 Sorba v. PA Drilling Co., 821 F.2d 200, 205 (3d Cir. 1987) (citing Chipollini v. Spencer Gifts, 814 F.2d 893, 900 (3d Cir. 1987)).

132 Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

133 Sheridan, 100 F.3d at 1071.

134 C.A.R.S., 527 F.3d at 370.

135 Id. (citing Farrell v. Planters Lifesavers, Co., 206 F.3d 271, 286 (3d Cir. 2001)); Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999) (explicitly referring to the evidence of the *prima facie* case in finding evidence supporting pretext); Jalil, 873 F.2d at 709 n.6 ("Although this fact is important in establishing plaintiff's *prima facie* case, there is nothing preventing it from also being used to rebut the defendant's proffered explanation.").

Here, in addition to the evidence set forth above in support of Plaintiff's satisfaction of the fourth prong of the *prima facie* case, Plaintiff can point to numerous facts that could lead a reasonable jury to either disbelieve Defendant's asserted reasons for terminating Plaintiff's employment or believe that a discriminatory reason more likely than not caused the action.

First of foremost, the lack of documentation supporting Defendant's arguments in this case is striking and ripe for disbelief.  **Zero** documents exist that state or reflect why Plaintiff was chosen for termination.[136]  Neither VP of HR Stafford nor Mr. Roman have ever seen a memo, email, handwritten note, or any other piece of paper that states exactly why Plaintiff was chosen to be fired.[137]  VP of HR Stafford - who was tasked with leading the restructuring process for this business unit from an HR perspective[138] - does not even know how Defendant reached its conclusion that Plaintiff would be terminated or what factors it allegedly relied upon.[139]  Despite her agreement that it would be HR best practices for such documentation to exist, she has never seen any such document.[140]  Defendant's Corporate Representative confirmed that no written documents exist stating: (1) why the structure that Mr. Roman allegedly submitted was rejected[141]; (2) why Plaintiff was chosen for termination[142]; (3) whether the operations director role under Mr. Roman was to be eliminated[143]; or (4) whether all operations roles are to be terminated.[144]

Mr. Roman did testify to various electronic communications he had with Boston Consulting Group ("BCG") regarding his organizational structure, including Plaintiff's position.[145]

---

[136] Stafford Dep. at 72:11-16; Roman Dep. at 155:6-9.
[137] Stafford Dep. at 72:18-23.
[138] Id. at 50:12-15.
[139] Id. at 74:12-18; 75:24-76:5; 77:8-15.
[140] Id. at 73:6-9; 78:2-8.
[141] 30(b)(6) Dep. at 86:9-15; 87:13-88:2.
[142] Id. at 89:10-21.
[143] Id. at 89:22-90:20.
[144] Id. at 90:22-91:6.
[145] Roman Dep. at 56:16-57:25.

Mr. Roman testified that he had many emails with BCG and that he learned of his reporting structure changes directly from BCG.[146]  Their communications took place within a few months before Plaintiff's termination and included questions from Mr. Roman regarding the guidelines he was given, and the various roles that his direct reports had at Defendant.[147]  VP of HR Stafford also had communications with BCG regarding Mr. Roman's organization.[148]  Defendant produced **none** of these communications with BCG in this litigation, and instead has taken the (false) position that no such communications even exist.[149]  In further conflict, Defendant's Corporate Representative testified that Mr. Roman submitted data regarding Plaintiff's position to BCG, but Defendant does not have any records of such communications or information.[150]

In its Brief, Defendant explains at length the reasons, and the overall process that Defendant employed, for the reduction in force.  In doing so, Defendant is conflating two (2) separate issues.  At the heart of this matter is not whether Defendant was required to undergo a reduction in force for business reasons.  What matters is why Plaintiff was chosen for termination.  For example, Defendant relies heavily on a Declaration from Mr. Cook to describe the "tabulations taken and shared between BCG and the decision committee," the various analyses of functional roles undertaken by the decision committee, and the organizational roles to be achieved by the company.[151]  **Zero documents exist to support any of these allegations, and none of these assertions explain why Plaintiff herself was terminated.**  In fact, neither Mr. Cook nor any other

---

[146] Id. at 59:1-60:1.
[147] Id. at 60:14-25; 61:23-62:6.
[148] Stafford Dep. at 82:25-83:1.
[149] See June 22, 2017 letter from Defendant's counsel (attached hereto as Exhibit 8) at p.8 ("After reasonable inquiry, Defendant is not aware of communications with Boston Consulting Group which relate directly to the layoff of Plaintiff or her placement in the Talent Pool.").
[150] 30(b)(6) Dep. at 59:2-8; 60:6-12; 80:17-21.
[151] Deft's Brief at p.5.

members of the "decision committee" were even disclosed in litigation in Defendant's FRCP 26 Initial Disclosures, let alone identified as a "decisionmaker" in this action.[152]

As a result, the reasons why Defendant chose Plaintiff for termination are highly disputed, material, and un-memorialized facts in dispute. For example, Defendant's witnesses testified that Plaintiff's performance played no role in the decision.[153] However, Defendant's Answer to Plaintiff's Complaint tells another story. Paragraph 41 of Plaintiff's Complaint states: "Plaintiff's performance played no role in the decision to terminate her."[154] Defendant's Answer to this allegation is simply: "Defendant denies the allegations contained in Paragraph 41 of the Complaint."[155] None of Defendant's witnesses were able to reconcile this fundamental conflict.[156]

Another hotly disputed material fact is whether all operations employees were terminated in connection with this reduction in force. On the one hand, Defendant seemingly argues that all operations directors - such as Plaintiff - were eliminated.[157] On the other, Defendant states that the responsibilities of operations directors were either eliminated, redistributed, **<u>or</u>** shifted to the automated tool of "salesforce.com."[158] According to Defendant's Corporate Representative, Defendant continued to employ operations employees after the reduction in force, but Plaintiff was not considered for any of those roles and no individual ever reviewed Plaintiff's skill sets or experiences that would have been applicable to those positions.[159] Operations directors – like Plaintiff – in other industry groups were likewise retained while Plaintiff was terminated in

---

[152] <u>See</u> Defendant's Initial Disclosures (attached hereto as Exhibit 9).
[153] Stafford Dep. at 87:15-17; Roman Dep. at 112:18-20; 30(b)(6) Dep. at 41:12-18.
[154] <u>See</u> Complaint (attached hereto as Exhibit 10) at ¶41.
[155] <u>See</u> Answer (attached hereto as Exhibit 11) at ¶41.
[156] 30(b)(6) Dep. at 42:16-22; Roman Dep. at 113:14-114:14.
[157] Deft's Brief at p.9 ("As a result, the decision committee eliminated the operations director positions that previously reported directly to the various Industry General Managers in the redesigned organization.").
[158] <u>Id.</u>
[159] 30(b)(6) Dep. at 27:8-15; 31:6-15.

connection with the reduction in force.[160]  Plaintiff has first-hand knowledge that her peers – the Operations Directors reporting to Industry General Managers within BSS – were **not** terminated in connection with this reduction in force.[161]  Only a jury can square this credibility dispute.

With regard to Plaintiff's job duties, Defendant admits that her responsibilities were **not** eliminated in full, but were rather eliminated, assumed by other persons, **or** handled by salesforce.com.[162]  The record shows that operations duties are still being performed by Defendant's employees, i.e., by Mr. Northam.  Also, according to VP of HR Stafford, part of Plaintiff's job duties ultimately were taken over by the Sales group.[163]  Defendant continued to fill Sales and other positions in 2012, even hiring some external candidates for these roles.[164]  Yet, Defendant never considered Plaintiff for any role and instead terminated her employment.[165]

Further, Defendant has taken contradictory positions on whether the "Talent Pool" that Plaintiff was placed into prior to termination was eliminated in full or if certain individuals survived this step in the process.  In its EEOC Position Statement, Defendant stated that "CSC was forced to RIF the entire Talent Pool."[166]  Defendant's witnesses, however, testified that this was not the case, and not all employees placed in the Talent Pool were terminated.[167]

Defendant's Motion should be denied and a jury should be tasked with resolving the conflicts between Defendant's various stories based on the facts and inferences therefrom in the record.  The Third Circuit has made clear: "The burden of persuasion on summary judgment remains unalterably with the employer as movant."[168]  The employer retains the burden of

---

[160] Id. at 73:16-22; Liano Declaration at ¶¶5-10.
[161] Liano Declaration at ¶¶5-10.
[162] Deft's Brief at p.11.
[163] Stafford Dep. at 85:22-86:5; 87:6-13.
[164] Roman Dep. at 134:13-136:6; 30(b)(6) Dep. at 119:8-121:5.
[165] 30(b)(6) Dep. at 159:18-20.
[166] See Exhibit 7 at p.1.
[167] Stafford Dep. at 99:24-100:1; Roman Dep. at 77:8-18; 30(b)(6) Dep. at 167:18-23.
[168] C.A.R.S., 527 F.3d at 362.

persuading the Court that, "even if all the inferences which would reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, **no reasonable jury** could find in the plaintiff's favor."[169] Thus, if there is **any** record evidence from which a reasonable inference may be drawn in favor of the non-moving party, then "the moving party simply cannot obtain summary judgment."[170] Even when the facts are not in dispute, summary judgment must be denied if competing inferences can be drawn from the undisputed facts on material issues.[171] "Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment."[172]

As is always the case, Defendant's position is that neither age nor sex played a role in the decision to terminate Plaintiff's employment, and, of course, Plaintiff disagrees based on the evidence set forth above. The single most important fact in this matter is unquestionably in dispute – whether age and/or sex caused Defendant to terminate Plaintiff's employment. The Court must recognize that when Defendant's witnesses testify at trial – presumably – that Plaintiff was not terminated for discriminatory reasons, the jury may not believe their testimony. Defendant's witnesses' actions on the witness stand may reflect doubt or deception in the juror's minds. For example, if a witness is asked at trial – "did you terminate Ms. Liano due to her age" or "did you terminate Ms. Liano because she is a female" – to which he responds by pausing, taking a sip of water, asking counsel to repeat the question, starts sweating, and then, finally, answering "no," a reasonable jury could certainly conclude that he is not being truthful in his response. If the jury thinks that a decision maker is lying when he says the decision was not motivated by a protected

[169] Marzano, 91 F.3d at 502 (emphasis added).
[170] Celotex Corp v. Catrett, 477 U.S. 317, 330 n.2 (1986).
[171] Hunt v. Cromartie, 526 U.S. 541, 552-53 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.").
[172] Leaphart v. Am. Friends Serv. Committee, No. 07-4919, 2008 U.S. Dist. LEXIS 85530, at *1 (E.D. Pa. Oct. 23, 2008) (citing Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996)).

trait, the jury may on that basis alone conclude that there was a civil rights violation.[173] Only the jury should be tasked with weighing factual disputes and contradicting testimonies, and for deciding whether Defendant's witnesses answered questions honestly.

Along those lines, recently Judge Schmehl denied defendant's motion following a jury verdict in favor of the plaintiff in an age discrimination case, noting the following in its opinion:

> Indeed, the Court recalls that Roth [the plaintiff's supervisor] was an extremely evasive, and, at times, disingenuous witness. Roth was impeached several times by plaintiff's counsel [citations omitted], including a particularly effective video impeachment concerning the reason why Roth would simply not keep plaintiff on the Fiserv account since he was doing a good job. On some occasions, the Court had to directly question Roth in order to elicit a non-evasive response [citations omitted]. Roth rarely answered a question with a "yes," "no," "I don't know," or "I don't remember" and then providing an explanation. ***Having witnessed Roth's demeanor on the stand, the jury apparently did not credit Roth's trial testimony that she was not the relevant decision-maker.***
>
> The jury further heard evidence that Roth had met plaintiff in person on one occasion in the fall of 2012. The jury heard Roth testify that upon meeting plaintiff in person in 2012, she believed him to be in his "mid to late 40s." With no offense to plaintiff, it would be obvious to any reasonable individual that met plaintiff, that he appears to be substantially older than in his "mid to late 40s." Even Roth herself testified that at some point during their meeting, she said to plaintiff, "You're not planning on retiring anytime soon, are you?" Why would she ask that to someone she thought was in his mid to late forties? Her statement borders on ridiculous. ***Obviously, the jury did not find Roth's belief as to plaintiff's age to be credible.***[174]

Here, since Plaintiff can establish a *prima facie* case, Defendant's Motion for Summary Judgment should be denied because, given that Defendant's credibility is squarely at issue, a jury could certainly disbelieve them when they articulate reasons for Plaintiff's termination.[175] For the reasons set forth above, a reasonable jury could easily conclude that Defendant's proffered reasons

---

[173] Hicks, 509 U.S. at 510-11 (("[T]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

[174] Gerundo v. AT&T Servs., 2016 U.S. Dist. LEXIS 177583, at **11-13 (E.D. Pa. Dec. 20, 2016) (emphasis added).

[175] Fuentes, 32 F.3d at 764; Tomasso v. Boeing Co., 445 F.3d 702, 710 (3d Cir. 2006) (reversing a grant of summary judgment, in part because, even though certain reasons given by the employer for the challenged action may be true, "a rational factfinder could conclude that [they] do not adequately explain the decision to terminate him.").

are simply false, and that it is more likely than not that discrimination caused Plaintiff's termination.

## V. CONCLUSION

It is anticipated that Defendant will respond to Plaintiff's arguments by stating that Defendant merely exercised its discretion and made business judgments that cannot be challenged. Of course, this is not the law. Courts routinely find that when a defendant employer's motivation and credibility are at issue, the case should go before for the jury. When a plaintiff has set forth sufficient evidence of pretext, the case should go before the jury. When inferences can be drawn in favor of discrimination, the case should go before the jury. Employers are not given carte blanche to take adverse actions against employees under the guise of "business judgment." To allow a defendant employer unfettered discretion would undercut the fundamental premise of anti-discrimination laws, which are remedial in nature and must be viewed broadly.[176]

In its Motion, Defendant is employing a common tactic of viewing each piece of evidence in a vacuum, arguing that each separate piece of evidence standing alone cannot support a claim of discrimination. However, the Third Circuit has often ruled that the Court must view the record as a whole picture, **especially** in employment discrimination cases where direct evidence is rare and plaintiffs must rely on circumstantial evidence to make their case.[177] As the Supreme Court has found, whether the discriminatory action was made for a legitimate business reason or was a mere pretext is a question of fact that could only be resolved by the jury.[178] Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment and permit this action to go before a jury.

---

[176] Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998) (noting that the court must construe remedial statutes broadly).
[177] Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996).
[178] Burlington v. Ellerth, 524 U.S. 742 (1998).

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

______________________________
Stephen G. Console
Rahul Munshi
1525 Locust St., Ninth Floor
Philadelphia, PA 19102

Counsel for Plaintiff, Linda Liano

Date: November 14, 2017